# EXHIBIT I

# Report on the Most Serious Management and Performance Challenges Facing the Small Business Administration in Fiscal Year 2019



guarantee loans to high-risk franchises and industries without monitoring risks, and where necessary, implementing controls to mitigate those risks. OIG reports have also found that SBA did not establish measures to evaluate the performance of pilot loan programs or evaluate performance when performance measures were established. For example, SBA's Community Express loan program was maintained as a pilot program for over 10 years without SBA performing an evaluation of the program. The pilot had been dominated by two lenders employing questionable credit practices and charging higher interest rates that ultimately led to SBA ending the program.

Since that time, SBA has made substantial progress in demonstrating that information from the portfolio risk management program is used to support risk-based decisions and implementing additional controls to mitigate risks in SBA loan programs. Specifically, in FY 2016 SBA established performance measures and risk mitigation goals applicable to each loan program and the entire lending portfolio. OCRM also conducted portfolio analyses of problem lenders with heavy concentrations in SBA 7(a) lending and sales on the secondary market. In response, OCRM proposed actions to mitigate SBA exposure on the secondary market. In FY 2017, SBA began an ongoing study of lender compliance with SBA loan status reporting. SBA identified deficiencies with the reporting and subsequently issued Information Notice 5000-1945, reminding lenders of the reporting requirements. Lastly, in FY 2018, SBA analyzed areas of identified risk including assessing the impact of hurricane deferments on 7(a) portfolio performance, accommodations concentration in the 7(a) portfolio, and an evaluation of the Community Advantage Program. Based on these analyses, SBA determined that the hurricane deferments would not have a significant impact on the ability to continue to operate at a zero subsidy, accommodations concentrations warrant continued monitoring, and that changes are necessary to the Community Advantage Program.

SBA maintains that the current program tracks performance to support risk-based decisions at the portfolio, sub-program, and lender level, and that identified risk issues are presented to SBA executive leadership at Lender Oversight Committee meetings. SBA will need to continue to demonstrate during FY 2019 that information from this program is used to support risk-based decisions and implement additional controls to mitigate risks.

### Increased Risk Introduced by Loan Agents

Prior OIG audits and investigations identified that SBA did not have a way to effectively identify and track loan agent involvement in its 7(a) and 504 loan portfolios and had outdated enforcement regulations. Additionally, OIG investigations have revealed a pattern of fraud by loan packagers and other for-fee agents in the 7(a) Loan Program, involving hundreds of millions of dollars. Since FY 2005, OIG has investigated at least 22 cases with confirmed loan agent fraud, totaling at least $335 million. Further, OIG has determined that loan agents were involved in approximately 15 percent of all 7(a) loans increasing the risk of default. Despite the prevalence of fraud in its loan portfolios, SBA's oversight of loan agents has been limited.

However, SBA has made substantial progress in developing effective methods to disclose and track loan agent activities on 7(a) program loans. Specifically, SBA requires lenders to provide a loan agent disclosure form (Form 159) to SBA's fiscal and transfer agent (FTA). Additionally, the FTA must  enter the data into a database accessible to SBA. SBA also began linking 7(a) loan Form 159 information with its loan data. However, a September 2015 OIG report on SBA's loan agent oversight (Report 15-16) identified significant issues in the data quality on the Form 159. While SBA has implemented an automated Form 159 within the SBA One system, an automated lending platform that assists lenders with everything from determining loan eligibility through closing their loan, SBA will likely need to make further modifications to this process. In 2016, SBA issued a notice

to lenders reiterating its requirements for loan agent disclosures and submission of the Form 159 to its FTA.

Additionally, in response to OIG concerns that SBA loan agent enforcement regulations are outdated, SBA prepared the Final Rule for Agent Revocation and Suspension Procedures, which was submitted to and approved by the SBA Administrator. However, due to the Presidential Executive Order on Reducing Regulation and Controlling Regulatory Costs, SBA does not intend to submit the final regulation to the Office of Management and Budget (OMB). SBA has indicated that the additional regulation is no longer necessary to provide effective enforcement procedures for loan agents because those effective enforcement procedures already exist in the SOP. Based on our review, we have determined that SBA's existing regulations and enforcement procedures would likely be sufficient.

In response to our loan agent report, SBA stated that it would explore the feasibility of implementing a registration system. Subsequently, SBA determined that the optimal way to gather information is the enhanced Form 159 that is required to be submitted electronically. The enhanced Form 159 was recently approved by OMB and will be rolled out with official notification and lender training. In addition to the enhanced Form 159, SBA's upcoming FTA contract will require the FTA to develop application and follow-up controls over lender submissions, to ensure that critical fields on each form are completed. SBA expects the enhanced controls to be fully implemented during FY 2019. In FY 2018, OIG removed one action (previously number five) from this challenge because recommended action number three fully addresses the intent of both recommended actions and aligns with the ongoing process improvements.

In addition, a March 2015 audit (Report 15-06) noted that the outsourcing of traditional lender functions to Lender Service Providers (LSPs), a type of loan agent, has significantly increased in recent years. Specifically, in 2014, over 770 lenders—or approximately 28 percent of the active 7(a) lenders—had an approved agreement with at least one LSP. Additionally, SBA loan portfolios associated with the three largest LSPs exceeded that of many of the top 100 active SBA 7(a) program lenders.

Since our 2015 report, the number of SBA-approved LSP agreements has reached almost 2,500, due in part to SBA's effort to better control access by LSPs to its systems. Specifically, SBA assigns an identifying number for all LSPs that access SBA systems and records all SBA-approved LSP agreements. This trend has enabled OCRM to develop initial performance metrics on LSP performance, but oversight is still limited. This audit also noted that several referrals regarding improper loan agent activities had not been acted upon by OCRM. In response, OCRM developed and now maintains a tracking system on referrals. As loan agent involvement in the 7(a) program continues to increase, it will become especially important for SBA to have oversight tools in place to identify and track loan agent involvement in this sizeable program.